# Holland+Knight

Tel 212 513 3200
Fax 212 385 9010

Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007-3189
www.hklaw.com

Michael J. Frevola
212 513 3516
michael.frevola@hklaw.com

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 2 9 2008

May 28, 2008

**VIA E-MAIL**

The Honorable Paul A. Crotty
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
Room 735
New York, New York 10007

*[Handwritten endorsement:]* 5/29/2008 While the decision was made on May 19, 2008, the Order and judgment was submitted and not signed on May 29, 2008, in fact it was not entered by the Clerk of the Court until May 28, 2008, at which time the 10 day of Rule 62(a) begins — as the Rule states. So ordered. Paul Crotty

**MEMO ENDORSED**

Re: Tangshan Schijichenhui Iron & Steel Products Co. v. Lords Polymer (I) Pvt. Ltd. (SDJ)
SDNY Docket #: 08 Civ. 3576 (PAC)
Our File: 116704-00001

Honorable Sir:

We are counsel for plaintiff Tangshan Schijichenhui Iron & Steel Products Co., Ltd. ("Tangshan") in the referenced matter.

We write with respect to the timing of the expiration of the automatic stay pursuant to Rule 62(a) of the Federal Rules of Civil Procedure. As Your Honor may recall, during the oral argument before Your Honor on May 19, 2008, the undersigned and counsel for defendant Lords Polymer agreed that the automatic stay governed the timing of any release of attached funds in this matter. We write now to obtain a ruling from the Court on the expiration deadline of that automatic stay.

We telephoned counsel for Lords Polymer this afternoon to confirm that, as the Court's Order and Judgment was entered today, the 10-day automatic stay under Rule 62(a) commenced running today. The Second Circuit has made very clear that no time will run on issues relating to orders and judgments until separate documents be noted as an order of judgment is entered by the Clerk on the docket for this case. Rule 62(a) similarly states that "no execution may issue on a judgment, nor may proceedings be taken to enforce until 10 days have passed after its *entry*." FRCP 62(a) (emphasis added).

We telephoned counsel to Lords Polymer today to confirm that, under Rule 62(a), the deadline for the expiration of the automatic stay would be ten (10) business days from today (10 business days being applicable under Rule 6 of the Federal Rules as the amount of days is less than 11 days, which requires the exclusion of intervening weekend days). Counsel for Lords Polymer took the position that the time for the automatic stay ran instead from Tuesday, May 20, 2008 (the

# DeOrchis & Partners, LLP

| | | |
|---|---|---|
| **Florida Office:**<br>2650 Biscayne Blvd.<br>Miami, FL 33137<br>(305) 571-9200 | *Attorneys and Proctors in Admiralty*<br>61 Broadway, 26th Floor<br>New York, New York 10006-2802 | **New Jersey Office:**<br>1495 Morris Avenue<br>Union, NJ 07083<br>(973) 467-4740 |
| **Connecticut Office:**<br>24 Hoyt Street<br>Stamford, CT 06905<br>(203) 348-5846 | Telephone: (212) 344-4700<br>Telefax:    (212) 422-5299<br>www.marinelex.com | **Massachusetts Office:**<br>Routes 28 & 137, P.O. 186<br>South Chatham, MA 02659<br>(508) 432-4715 |

May 29, 2008

John A. Orzel, Partner
jorzel@marinelx.com

*Via E-Mail*

The Honorable Paul A. Crotty
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re: **Tangshan Schijichenhui Iron & Steel v.
> Lords Polymer (I) Pvt., Ltd.
> 08 Civ. 3576 (PAC)**
> Our File:    2411-1

Honorable Sir:

     We are attorneys representing defendant Lords Polymer (I) Pvt., Ltd., ("Lords") in the above matter and write in response to the letter from plaintiff's counsel dated May 28, 2008, regarding the issue of when the Rule 62(a) automatic 10-day stay of execution of judgment should commence. As the Court is aware, this is a Rule B maritime attachment case in which, after a motion by Lords, the Court found that there was no admiralty jurisdiction over the claims asserted against Lords. At oral argument of the motion on May 19, 2008, the Court Ordered that the writ of attachment against Lords be vacated and that the US$1,247,421.10 seized pursuant to the writ be released. At oral argument, the Court directed that the undersigned prepare an Order and Judgment for signing by the Court, upon notice to plaintiff. The undersigned prepared the draft Order and Judgment, obtained the consent of plaintiff's counsel and forwarded the draft to the Orders and Judgments Clerk on the morning of May 20, 2008, as required by the Local Rules of the Southern District. The Clerk made an entry on the docket, immediately following the hearing which stated, "Attachment vacated." *See Minute Entry dated 05/19/2008.*

     The only reason to argue that the 10-day automatic stay did not begin until May 28, 2008, when it was entered on the docket is to further delay the release of Lords' funds. As the Declaration of Amit Saha, dated May 19, 2008, which was included with Lords' Reply Memorandum of Law (and attached hereto) shows, a further 10-day delay may prove fatal to Lords' business. Lords asks

that the Court keep in mind the purpose of the Federal Rules of Civil Procedure, which is "to secure the just, speedy, and inexpensive determination of every action." F.R.Civ.P. 1. The continuing harm being caused to Lords should not be allowed simply because the Clerk of the Court delayed in entering the Court's Order and Judgment. The Court certainly has the equitable power to prevent any further damage to Lords.

The case relied upon by plaintiff in support of its position is not dispositive of this issue. In *Status Int'l v. M&D Maritime*, 1998 U.S. Dist. LEXIS 2825 (S.D.N.Y.), the defendant gave orders to a garnishee bank to release funds before the expiration of the automatic 10-day stay. Lords has not done that. In fact, Lords confirmed to the Court and plaintiff that it would abide by the Rule 62(a) stay, at the conclusion of the oral argument. Plaintiff has already had seven (7) business days to consider the appeal since the May 19 hearing, and will have the proper ten (10) days if the funds are not released until June 4, 2008 within which to benefit from the automatic stay to the detriment of Lords. Lords has refrained from approaching the garnishee banks and will continue to do so until June 4, 2008, but further delay in releasing the restrained US$1,247,421.10 will continue to cause material damage to Lords' business.

We thank the Court for its consideration of this matter and urge that the Court not extend the Rule 62(a) automatic stay past June 4, 2008.

Respectfully,
DE ORCHIS & PARTNERS, LLP.

By _____
John A. Orzel

cc: Holland & Knight, LLP.
    Attn: Michael J. Frevola, Esq.
    Michael.frevola@hklaw.com

TANGSHAN SCHILICHENHUI IRON AND STEEL PRODUCTS CO., LTD. v.
LORDS POLYMER (I) PVT. LTD., BLUE FLEET MANAGEMENT CO. LTD.,
BLUE FLEET CHARTERING S.A., and BELINDA BLUE OCEAN INC.

08 Civ. 3576 (PAC)

FURTHER AFFIRMATION IN SUPPORT OF AMIT SAHA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TANGSHAN SHAHCHENHU IRON AND
STEEL PRODUCTS CO. LTD.,

                         Plaintiff,

- against -

LORDS POLYMER (I) PVT. LTD.; BLUE FLEET
MANAGEMENT COMPANY LTD.; BLUE FLEET
CHARTERING S.A.; and BELINDA BLUE
OCEAN INC.,

                         Defendants.

------------------------------------------------------------X

08 Civ. 3576 (PAC)

AFFIRMATION IN
SUPPORT OF MOTION
TO VACATE MARITIME
ATTACHMENT

## AFFIRMATION OF AMIT SAHA

AMIT SAHA, of Lords Polymer Pvt. Ltd. (hereinafter "LORDS") of 33A, Jawaharlal Nehru Road, Chatterjee International Centre, 4th Floor, Room No. A/4, Kolkata – 700 071 solemnly, sincerely and truly affirm and say as follows:

1. I am a Director of LORDS and I am duly authorized to make this Affirmation on its behalf in support of my company's motion to vacate the maritime attachment.

2. I verily believe that the contents of this Affirmation are true to the best of my knowledge information and belief being based upon information and documents held by LORDS and my personal knowledge as a Director of LORDS.

3. The major business of LORDS is export of iron ore fines from India to China. As such contracts are negotiated in US Dollars, we have been unable to enter into any further contracts for the sale of iron ore fines. In addition, since most Chinese buyers

- 1 -

with whom we have dealings require contracts to be on CIF or C&F basis, we have similarly been unable to charter any vessels to transport the goods to be able to fulfill our contracts as shipowners require payment in U.S. Dollars. The result is that our business has come to a complete standstill. We were normally effecting 2/3 shipments totalling 50,000 - 70,000 m.t. per month at an average profit of about US$ 900/mt.

The immediate losses that we have suffered are as follows :

a) We entered into a contract with Sino Ment Enterprises Ltd. for the sale of 40,000 m.t. iron ore fines for shipment to any main Chinese port within 5th May 2008. As a result of the maritime attachment we were unable to ship the goods and the buyers have claimed US$ 500,000 as damages for non-performance.

b) We entered into a contract with Hiton Resources, Hong Kong, for the sale of 25,000 m.t. iron ore fines for shipment to China within May 2008. As a result of the maritime attachment we were unable to ship the goods and the buyers have claimed US$ 300,000 as damages for non-performance.

c) In respect of both the above contracts we have also lost our profit estimated at US$ 075,000.

d) We entered into a contract with I.T.G. (China), for the sale of 25,000 m.t. iron ore fines for shipment to China within April 2008. The goods were shipped on the Dana M. As a result of the maritime attachment we were unable to pay freight to the owners of vessel Dana M and the cargo is currently stuck at the discharge port in China and the buyers are refusing to pay for the goods. The value of this consignment was US$ 1,890,327.02. On top we are incurring interest @ 16% p.a. to our bankers. The current indications from our buyers if this is immediately resolved, is they would be expecting a discount of about US$ 40 per m.t. In addition we would have to pay the extra storage charges and customs penalty in China. I therefore,

- 2 -

estimate that our total losses in relation to this contract are in the region of US$ 1,044,843.54.

For the above reasons our business has been totally crippled since the maritime attachment was made and I would respectfully ask that the maritime attachment be vacated.

AFFIRMED by the above named   )   *Amit Saha*
AMIT SAHA at Kolkata            )
                                )
this 19th day of May, 2008      )


Solicitor/Notary Public


- 3 -